# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN MOROZIN, | : | |
|     Plaintiff/ Counterclaim Defendant, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 11-2653 |
| | : | |
| MARK L. JOHNSON, | : | |
|     Defendant/ Counterclaim Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE BOARD OF SUPERVISORS OF BUCKINGHAM TOWNSHIP, | : | |
|     Counterclaim Defendant. | : | |
| | : | |

## Memorandum

YOHN, J.                                                                                          November 17, 2011

      Plaintiff, John Morozin, a police officer with the Buckingham Township Police Department, brought this action for negligence and willful misconduct against defendant Mark L. Johnson as a result of incidents surrounding his arrest of Johnson. Johnson answered the complaint and asserted counterclaims against Morozin and counterclaim defendant, the Board of Supervisors of Buckingham Township (the "Supervisors"),[1] under 42 U.S.C. § 1983 and Pennsylvania law. For his section 1983 claims, Johnson alleges that Morozin is liable for his use

---

[1] Although submissions from all parties identify the Supervisors as a third-party defendant, this characterization is not entirely accurate. The Supervisors are not alleged to be liable to Johnson, the defending party, "for all or part of [plaintiff Morozin's] claim against [him]" and thus were not impleaded under Federal Rule of Civil Procedure 14. Accordingly, I prefer the term "counterclaim defendant" to describe the Supervisors who are alleged to be liable to Johnson directly on the counterclaims asserted in his answer.

of excessive force in violation of the Fourth Amendment to the United States Constitution and that the Supervisors are liable for their failure to adequately train Morozin. Johnson also asserts a state-law claim of battery against Morozin. Currently before the court is the motion filed by Morozin and the Supervisors (collectively, the "counterclaim defendants") to dismiss Johnson's counterclaims for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, I will deny the counterclaim defendants' motion.

I.      **Factual Background and Procedural History**

Johnson asserts the following factual allegations in support of his counterclaims, which I must accept as true for the purposes of this motion to dismiss.[2] Morozin was employed as a uniformed police officer by the Buckingham Township Police Department at all relevant times. (Compl. ¶ 3; Answer ¶ 3.) On July 8, 2010, Morozin, who was on duty, in full uniform and operating a marked patrol car, pulled over a 2004 Ford Escape driven by Johnson. (Compl. ¶ 5; Answer ¶ 5; Countercl. ¶¶ 9-10.) After a brief investigation, Morozin informed Johnson that he was being arrested for driving under the influence of alcohol. (Countercl. ¶ 11.) Morozin arrested and handcuffed Johnson and transported him to Doylsestown Hospital. (Compl. ¶¶ 4-6; Answer ¶¶ 4-6; Countercl. ¶ 12.)

---

[2] The following summary is based on the allegations in Johnson's answer and counterclaim, which I assume to be true for purposes of the counterclaim defendants' motion to dismiss, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), as well as allegations in Morozin's complaint that were admitted as true in Johnson's answer and counterclaim, *see Hospitality Assocs. of Lancaster, L.P. v. Lancaster Land Dev., L.P.*, No. 07-03955, 2008 U.S. Dist. LEXIS 76772, at *8-9 n.4 (E.D. Pa. Sept. 30, 2008), and the disposition of related state-court criminal proceedings of which I may take judicial notice in a motion to dismiss, *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993).

Once they arrived at the hospital, Morozin handcuffed Johnson's left arm to a pole. (Countercl. ¶ 13.) Johnson admits that a physical altercation occurred between Morozin and him at the hospital. (Answer ¶ 7.) Although the parties dispute what actually occurred during the altercation, I will accept Johnson's version of the facts as true for the purposes of this motion to dismiss. According to Johnson, Morozin refused to explain why he had been transported to the hospital or what procedures he was going to undergo while at the hospital, and falsely insisted that he had already explained the purpose of the hospital visit to Johnson. (Countercl. ¶¶ 14-15.) Morozin then announced that Johnson had refused to permit his blood to be drawn. (*Id*. ¶ 16.) Morozin allegedly released Johnson's handcuffed arm, grabbed the front of his shirt, dragged him by his shirt out of the chair in which he was seated, and then twisted his right arm behind his back, forcing Johnson to the floor. (*Id*. ¶¶ 17-18.) In grabbing and twisting his arm, Morozin allegedly cut Johnson's arm, leaving a 3/4-inch-long laceration that was 1/4-inch deep. (*Id*. ¶ 19.) Despite the fact that the wound was bleeding profusely, Morozin removed Johnson from the hospital without treatment and transported him to the Buckingham Township Police Department in handcuffs. (*Id*. ¶ 20.)

Johnson was charged with aggravated and simple assault, resisting arrest, and driving under the influence of alcohol. (*Id*. ¶ 20.) Johnson ultimately pleaded guilty to resisting arrest, simple assault, and driving under the influence ("DUI"). (Countercl. Defs.' Mot. Dismiss Ex. D at 6.)

As a result of this physical altercation, Morozin filed a complaint against Johnson in the Court of Common Pleas of Bucks County on March 30, 2011, asserting one count of negligence and one count of willful misconduct. Morozin seeks compensatory damages, delay damages,

interest, and costs. Johnson filed a timely notice of removal on April 19, 2011. Morozin filed a motion to remand on April 27, 2011, which I denied in an order dated May 16, 2011.

Johnson answered the complaint and asserted counterclaims against Morozin and the Supervisors on June 9, 2011. Johnson asserts count I of the counterclaim against Morozin under 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth Amendment to the United States Constitution. Count II is asserted against the Supervisors under 42 U.S.C. § 1983 for failure to properly train the Buckingham Township Police and deliberate indifference to a pattern of excessive force used by Morozin. Johnson brings count III against Morozin for battery. Johnson seeks compensatory damages, attorney fees, and costs against the Supervisors, and compensatory damages, punitive damages, attorney fees, and costs against Morozin.

Morozin and the Supervisors filed a joint motion to dismiss all three counts contained in Johnson's counterclaim for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) on July 11, 2011.

## II.     Standard of Review

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a complaint." *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 524 (W.D. Pa. 2011) (citing *United States v. Union Gas Co.*, 743 F. Supp. 1144, 1150 (E.D. Pa. 1990)). "To survive a motion to dismiss [under Rule 12(b)(6)], a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [counterclaim] plaintiff pleads factual content that allows the court to draw the reasonable inference that the

[counterclaim] defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (2009).

In evaluating a motion to dismiss, a court should separate the "the factual and legal elements of a claim." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the [counterclaim's] well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210-11. The assumption of truth does not apply to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. Rather, the counterclaim must contain "'enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

**III.     Discussion**

Counterclaim defendants seek dismissal of all counts asserted against them. They urge dismissal of count I, the section 1983 excessive-force claim, on the theory that it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), or that Morozin should be granted qualified immunity.[3] As to count II, the failure-to-train section 1983 claim, they contend that Johnson fails to state a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Counterclaim defendants seek

---

[3] In addition, to the extent that Counterclaim defendants interpret count I as also alleging a substantive due-process claim or an equal-protection claim under the Fourteenth Amendment to the Constitution, they seek dismissal of these claims. Johnson, in his response brief, assures the court that he is not asserting any independent Fourteenth Amendment claims, but that the reference to the Fourteenth Amendment in his counterclaim is "only to establish that the protections set forth in the Fourth Amendment apply to state action." (Countercl. Pl.'s Resp. to Countercl. Defs.' Mot. Dismiss 2 n.1.)

dismissal of count III on the grounds that Morozin's actions were privileged, or alternatively, that Johnson failed to plead a cause of action for battery. Finally, they ask me to dismiss Johnson's request for punitive damages. In light of the record before me, I will deny counterclaim defendants' motion.

### A.     Judicial Notice and the Record Before the Court

As a preliminary matter, I must decide whether to take judicial notice of the various exhibits the counterclaim defendants have attached to their motion to dismiss. The exhibits that the counterclaim defendants would have me consider include: (1) Exhibit C, which includes a police criminal complaint, an affidavit of probable cause sworn by Morozin, and a police incident investigation report; (2) Exhibit D, an unsworn handwritten statement by a witness to the altercation; and (3) Exhibit E, which includes a transcript of Johnson's guilty plea colloquy, a copy of the docket in the state-court criminal case against Johnson, a copy of an untitled court document waiving the right to a preliminary hearing, a Bucks County DUI Court Sheet, and a handwritten letter from Johnson to Morozin.

"When deciding a motion to dismiss, it is the usual practice for a court to consider only the allegations contained in the [pleading setting out the claims or counterclaims subject to dismissal], exhibits attached to [that pleading], and matters of public record." *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998). "Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions such as convictions or mistrials, letter decisions of government agencies, and published reports of administrative bodies." *Pension Benefit Guar. Corp.,* 998 F.2d at 1197 (internal citations omitted). However, "examin[ing] a transcript of a prior proceeding to find

facts converts a motion to dismiss into a motion for summary judgment." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999) (citing *Kauffman v. Moss*, 420 F.2d 1270, 1274-75 (3d Cir. 1970)). In addition to the public records, "a court may consider an undisputedly authentic document that a [counterclaim] defendant attaches as an exhibit to a motion to dismiss if the [counterclaim] plaintiff's claims are based on the document." *Pension Benefit Guar. Corp.,* 998 F.2d at 1196.

I will take judicial notice of the disposition of Johnson's state criminal case. *Pension Benefit Guar. Corp.*, 998 F.2d at 1197. However, I decline to take judicial notice of the other exhibits as they are not proper for me to consider as part of a motion to dismiss. The documents that constitute Exhibits C, D, and E do not fall within the Third Circuit's definition of public documents; nor do they form the basis of Johnson's counterclaims. I will not convert this motion to dismiss into a motion for summary judgment, and thus will not consider the transcript of Johnson's plea colloquy. Counterclaim defendants should not have attached these exhibits to their motion in the first instance.

    **B.**    **Excessive Force (Count I)**

        **1.**    *Heck v. Humphrey*

Counterclaim defendants seek dismissal of Johnson's excessive-force claim on the ground that it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In that case, the United States Supreme Court held that a section 1983 claim "could not be maintained on the basis of events leading to a conviction which has not been reversed or impaired by other official proceedings if a judgment in favor of the plaintiff in the civil case would imply that the conviction was invalid." *Nelson v. Jashurek*, 109 F.3d 142, 144 (3d Cir. 1997). According to the

counterclaim defendants, because Johnson pleaded guilty to simple assault and resisting arrest, neither of which has been invalidated, he is barred by *Heck* from pursuing a claim of excessive force.

The *Heck* bar does not apply, however, where "a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." *Heck*, 512 U.S. at 487 n.7. In *Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997), the Third Circuit held that a finding of excessive force in a section 1983 action would not necessarily imply that a conviction for resisting arrest was unlawful. There, "[Plaintiff] was convicted for resisting arrest in violation of section 5104 which provides that a person is guilty of resisting arrest if 'with the intent of preventing a public servant from effecting a lawful arrest [he] creates a substantial risk of bodily injury to the public servant . . . or employs means justifying or requiring substantial force to overcome the resistance.'" *Id*. However, the court reasoned that "the fact that [the officer] was justified in using 'substantial force' to arrest [plaintiff] does not mean that he was justified in using an excessive amount of force." *Id*. Thus, "there undoubtedly could be 'substantial force' which is objectively reasonable and 'substantial force' which is excessive and unreasonable. Yet a finding that [the officer] used excessive 'substantial force' would not imply that the arrest was unlawful" and thus the court concluded that *Heck* did not apply. *Id*. Accordingly, Johnson's plea under the same statute does not foreclose his section 1983 action for excessive force.

The Third Circuit reached a similar conclusion with respect to assault in *Lora-Pena v. FBI*, 529 F.3d 503, 505 (3d Cir. 2008). Lora-Pena, who had been convicted of three counts of assault on a federal officer and one count of resisting arrest, asserted an excessive-force claim under section 1983 arising out of the same incident that lead to his conviction. *Id*. The court

concluded that the *Heck* bar did not apply to this claim, because the plaintiff's "convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his own unlawful actions." *Id*. at 506.

This logic extends to Johnson's conviction under Pennsylvania law for simple assault. *Cf. Garrison v. Porch*, 376 F. App'x 274 (3d Cir. 2010) (holding that the mere fact of a conviction for simple assault under New Jersey law does not automatically preclude an excessive-force section 1983 claim under *Heck*); *Domitrovich v. Borough of Monaca*, No. 08-1094, 2010 U.S. Dist. LEXIS 90645, at *21 n.2 (W.D. Pa. Sept. 1, 2010) (noting that Pennsylvania and New Jersey's definitions of simple assault are identical). Therefore, *Heck* presents no bar to Johnson's section 1983 excessive-force claim, and I will not dismiss count I on the basis of this argument.

## II.     Qualified Immunity

The counterclaim defendants urge me to apply qualified immunity and dismiss count I, Johnson's section 1983 excessive-force claim against Morozin. At this early stage in the litigation, I cannot grant counterclaim defendants' motion to dismiss on the basis of qualified immunity, since the immunity cannot be established in light of the record properly before me.

Qualified immunity is an immunity from suit, rather than a defense to liability, and must therefore be resolved at the earliest possible stage possible in litigation. *Pearson v. Callahan*, 555 U.S. 223 (2009). Government officials are entitled to qualified immunity from suit under section 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997). Qualified immunity

protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The defendant has the burden of pleading and proving qualified immunity. *Harlow*, 457 U.S. at 815. A defendant may raise the issue of qualified immunity on a motion to dismiss where the defense is "based on facts appearing on the face of the complaint" (in this case the counterclaim). *See McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). However, "'[e]ven in applying the *Iqbal* [pleading] standard, the Court of Appeals for the Third Circuit has warned that 'it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases.'" *Haniotakis v. Nassan*, 727 F. Supp. 2d 388, 404 (W.D. Pa. 2010) (quoting *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009)).

The Supreme Court has outlined a two-step process for determining whether a defendant is entitled to qualified immunity.[4] *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). First, the court analyzes whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id*. at 201; *see also Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007). Second, if the allegations support a violation of a constitutional right, the court must "ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. With respect to this second step, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202.

---

[4] In *Pearson*, the Supreme Court held that the sequence of the two-pronged qualified-immunity analysis set forth in *Saucier* is no longer mandatory and that trial courts now have discretion to determine which of the two prongs of the analysis to apply first. 555 U.S. at 234.

Counterclaim defendants argue under both prongs of the *Saucier* analysis. They contend that there was no violation of a constitutional right and that Morozin's conduct was reasonable—not clearly unlawful—given the situation he confronted. I will consider each argument in turn.

First, I conclude that the facts alleged state a claim for the violation of Johnson's Fourth Amendment rights. Claims for excessive force arising in the context of an arrest are properly analyzed under the Fourth Amendment's "reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Because this test of reasonableness "'is not capable of precise definition or mechanical application,' . . . its proper application requires careful attention to the facts and circumstances of each particular case." *Id*. at 396 (citation omitted). In determining whether a particular use of force is constitutionally actionable, "the question is whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. The reasonableness of the force at issue "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396.

Counterclaim defendants argue that Morozin's actions in arresting Johnson were objectively reasonable in light of Johnson's actions in resisting arrest. Counterclaim defendants ask me to consider Johnson's guilty plea colloquy in support of their version of the arrest, which they believe demonstrates that Morozin's actions were objectively reasonable.

As discussed above, I cannot examine the transcript of a prior proceeding without converting this motion to dismiss into a motion for summary judgment. *See S. Cross Overseas Agencies, Inc.*, 181 F.3d at 426-27. Rather, I must consider the reasonableness of Morozin's

actions as alleged in the counterclaim in light of the facts admitted in the counterclaim and the fact of Johnson's guilty plea for resisting arrest in violation of 18 Pa. Cons. Stat. § 5104 and for simple assault in violation of 18 Pa. Cons. Stat. § 2701. A person is guilty of resisting arrest in violation of section 5104 if, acting with the requisite intent, he either "creates a substantial risk of bodily injury to the public servant or anyone else," or he "employs means justifying or requiring substantial force to overcome the resistance." Section 2701 defines simple assault to include "attempts to cause or intentionally, knowingly or recklessly caus[ing] bodily injury to another" and "attempts by physical menace to put another in fear of imminent serious bodily injury" among other things.[5]

Johnson admits that an altercation took place between Morozin and him at the hospital. Beyond the fact of the altercation, I can deduce from the fact of Johnson's guilty pleas only that the incident at a minimum "justif[ied] or requir[ed] substantial force" by Morozin and that Johnson must have at least "attempt[ed] to cause . . . injury to another" or "attempt[ed] . . . to put another in fear of imminent serious bodily injury." §§ 2701, 5104. Johnson alleges that the force Morozin used in response was excessive in that Morozin dragged him by the collar of his shirt

---

[5]Section 2701(a) provides that a person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;
(2) negligently causes bodily injury to another with a deadly weapon;
(3) attempts by physical menace to put another in fear of imminent serious bodily injury; or
(4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person.

§ 2701(a).

out of the chair he was seated in, grabbed and twisted his arm behind his back, forced him to the ground, inflicted a 3/4-inch long by 1/4-inch deep laceration that bled profusely, and then removed him from the hospital without obtaining medical care for his bleeding wound.

Given that the "proper application" of the reasonableness test "requires careful attention to the facts and circumstances of each particular case," I cannot determine whether Morozin's actions were objectively reasonable in light of what little information I have before me. *Graham*, 490 U.S. at 396. Accordingly, at this stage of the litigation I must conclude that Johnson has sufficiently alleged that the "officer's conduct violated [his] constitutional right." *Saucier*, 533 U.S. at 201.

Similarly, counterclaim defendants' argument under the second prong of *Saucier* fails for a paucity of information. Again, counterclaim defendants ask me to consider the transcript of Johnson's colloquy, which they urge demonstrates that if Morozin did in fact use excessive force, he "made a reasonable mistake as to what the law requires." *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004). The cases they cite in support of this argument are of no avail because they involve determinations at the summary-judgment stage. *See M.B. v. City of Philadelphia*, 128 F. App'x. 217, 226 (3d Cir. 2005) (not precedential) ("[T]he Pennsylvania Supreme Court held that summary judgment may be granted in a civil proceeding based upon a guilty plea in a criminal case if the operative facts in the criminal case are identical."); *Lawson v. McNamara*, No. 10-0382, 2010 U.S. Dist. LEXIS 120645 (E.D. Pa. Nov. 12, 2010) (granting summary judgment on the basis of qualified immunity as to an excessive force claim in light of facts established in a plea colloquy); *Domitrovich*, 2010 U.S. Dist. LEXIS 90645 (relying on a guilty plea colloquy in a motion for summary judgment).

The counterclaim defendants have the burden of pleading and proving qualified immunity, a burden they have not carried in this motion to dismiss. *Harlow*, 457 U.S. at 815. Thus, I will deny their request for qualified immunity at this time.

Furthermore, I will deny counterclaim defendants' motion to dismiss count I.

### C.     *Monell* Claim (Count II)

Next, counterclaim defendants seek dismissal of count II of Johnson's counterclaim, a section 1983 action against the Supervisors, for failure to plead a claim upon which relief may be granted under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Because I conclude that Johnson has sufficiently pleaded a cause of action, I will deny the motion as to this count.

In order to state a claim against a municipality under section 1983, a plaintiff may not rely on a respondeat superior theory of liability but must instead "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell*, 436 U.S. at 694). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Id.* (alteration in original) (quoting *Monell*, 436 U.S. at 690). "Custom . . . may also be established by evidence of knowledge and acquiescence." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). "To satisfy the pleading standard, [a plaintiff] must identify a

custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

"[I]nadequacy of police training may serve as the basis for § 1983 liability '*only* where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Beck*, 89 F.3d at 971-72 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)) (emphasis added). In such a failure-to-train case, the plaintiff must allege not only a custom or policy but also "'causation--i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [his] injury.'" *Beck*, 89 F.3d at 972 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)).

In his counterclaim, Johnson asserts that the Supervisors "failed to provide and/or adopt policies and regulations to ensure that uniformed officers of the Buckingham Township Police Department such as Morozin received adequate and appropriate training in the use of force against individuals such as [himself] arrested on suspicion of driving under the influence of alcohol." (Countercl. ¶ 34.) Furthermore, he avers that "on other occasions prior to July 8, 2010, [the date of Johnson's arrest] Morozin had used excessive force during the arrest of other individuals suspected of violating the law." (Countercl. ¶ 35.) Importantly, Johnson alleges that "supervisors in the police department and the Supervisors knew of these incidents but were deliberately indifferent to the harm suffered by individuals with whom Morozin came in contact while acting as a Buckingham Township police officer." (Countercl. ¶ 36.) According to Johnson, his physical and emotional injuries were "the direct and proximate result of the Supervisors' failure to provide and/or adopt policies and regulations on the use of force and their

15

deliberate indifference to the prior actions of Morozin." (Countercl. ¶ 37.)

Counterclaim defendants argue that these allegations are insufficient as they are nothing more than "bald statements" of liability and "mere recitations of the elements of [a] *Monell* claim." (Reply Mem. Law Supp. Countercl. Defs.' Mot. Dismiss 5.) They urge me to follow *Hart v. Tannery*, No. 10-3675, 2011 U.S. Dist. LEXIS 26277, at *27 (E.D. Pa. Mar. 14, 2011), in which the district court dismissed a *Monell* claim for insufficient pleading. In *Hart*, the plaintiff's twelve-page complaint only mentioned a policy or custom in setting out the cause of action and merely asserted that the defendant municipality was the "moving force" behind the alleged violation of his constitutional rights.

Because Johnson has made factual allegations that render his claim plausible, the instant matter is distinguishable from *Hart*. If, after discovery, Johnson can adduce evidence to support his allegations that Morozin had used excessive force on prior occasions and that the Supervisors knew of these incidents and acquiesced in his actions, then the municipality may be liable. Likewise, if Johnson can prove that the municipality did not provide adequate training to police officers on how to avoid excessive force in the arrest of individuals suspected of driving under the influence, he may prevail against the Supervisors. While Johnson's averments in this regard are somewhat conclusory in nature, they are sufficient to withstand a motion to dismiss.

Finally, counterclaim defendants urge me to take judicial notice of the provisions of Pennsylvania law governing the training of municipal police officers. Specifically, counterclaim defendants rely on 53 Pa. Cons. Stat. § 2161 *et seq.* and 37 Pa. Code § 203.1 *et seq.*, which provide that members of municipal police departments must be trained in accordance with the guidelines established by the Municipal Police Officers Education and Training Commission

prior to enforcing criminal laws, making traffic stops, or carrying a firearm. *See* 53 Pa. Cons. Stat. § 2167; 37 Pa. Code § 203.51. They urge dismissal because this "training is both comprehensive and recognized as providing legally sufficient minimum training." (Mem. Law Supp. Countercl. Defs.' Mot. Dismiss ("Defs.' Mem.") 10.) However, counterclaim defendants cite no authority in support of their argument that the training is "legally sufficient" and thus forecloses a failure-to-train section 1983 claim, nor am I aware of any. Furthermore, as Johnson points out, the conclusion that there can be no claim for inadequate training does not follow from the mere fact that Pennsylvania law mandates training. Even if I were to take judicial notice of these provisions, I cannot determine on the record before me whether Morozin actually received the training required by Pennsylvania law, much less whether it was adequate.

I will deny counterclaim defendants' motion to dismiss count II.

### D.     Battery (Count III)

Counterclaim defendants also argue that Johnson's claim for battery against Morozin should be dismissed. First, they assert that dismissal is appropriate because the force Morozin used against Johnson was reasonable under the circumstances and is therefore "privileged." (Defs.' Mem. 11-12.)  In support of this argument, counterclaim defendants rely primarily on *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994), in which the Pennsylvania Supreme Court observed that a police officer "may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty" and, in making a lawful arrest, "may use such force as is necessary under the circumstances to effectuate the arrest." They contend that Johnson's guilty "plea to resisting arrest implies [that] some force [was] needed to overcome the resistance." (Defs.' Mem. 12.) Second, counterclaim defendants claim that Johnson "alleges only

a 'cut' on his arm," which they assert is insufficient for a battery claim. (Defs.' Mem. 12.) From this I infer that counterclaim defendants seek to challenge whether Johnson has sufficiently pleaded a cause of action for battery.

As the *Renk* court recognized and counterclaim defendants acknowledge, it is "[t]he reasonableness of the force used in making the arrest" that determines "whether the police officer's conduct constitutes an assault and battery." 641 A.2d at 293. Counterclaim defendants argue that because Johnson pleaded guilty to resisting arrest, and therefore Morozin was justified in using "substantial force" to overcome his resistance, the force Morozin used was necessarily reasonable. Furthermore, they contend that because the arrest was itself lawful, Johnson cannot complain of the use of handcuffs.

Although I agree that Johnson's guilty plea establishes that Morozin was justified in using "substantial force" against him, it does not follow that Morozin was justified in using "excessive" force or that no amount of force could be considered unreasonable. *Nelson*, 109 F.3d at 145 ("[T]here undoubtedly could be 'substantial force' which is objectively reasonable and 'substantial force' which is excessive and unreasonable."). Once again, I find the record insufficient to warrant a finding of reasonableness at this stage, and cannot now conclude that the force Morozin used is privileged.

I also reject counterclaim defendants' argument that Johnson has insufficiently pleaded a cause of action for battery. Under Pennsylvania law, an "'[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.'" *Renk*, 641 A.2d at 293 (quoting *Cohen v. Lit Brothers*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)).

A battery is defined as a "'harmful or offensive contact' with the person of another." *C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008) (quoting *Dalrymple v. Brown*, 701 A.2d 164, 170 (Pa. 1997)). Johnson has pleaded that Morozin intentionally caused an offensive contact with his person—by pulling him out of his chair, grabbing and twisting his arm, pushing him to the floor, and wounding his arm—which directly and proximately caused a wound to his arm and a shock to his nerves. These averments are sufficient to state a claim for battery. I will deny counterclaim defendants' motion to dismiss count III of Johson's counterclaim.

### E. Punitive Damages

Finally, counterclaim defendants urge me to dismiss Johnson's claims for punitive damages because, according to them, "[counterclaim] plaintiff is seeking to recover punitive damages against the Board of Supervisors of Buckingham Township and the Counterclaim Defendant, Officer Morozin, in his official capacities [sic]" (Defs.' Mem. 10-11), and punitive damages are not recoverable against either a municipality or an officer sued in his official capacity under section 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988). Alternatively, counterclaim defendants argue that Johnson has not sufficiently pleaded a claim for punitive damages under Pennsylvania law.

While the counterclaim defendants accurately summarize the state of the law, they have misread Johnson's counterclaim. Johnson does not seek punitive damages in count II, the only count alleged against the Supervisors. Additionally, Johnson's counterclaim does not state a claim against Morozin in his official capacity but rather alleges that he was acting under color of state law. "Personal-capacity damage suits under section 1983 seek to recover money from a

government official, as an individual, for acts performed under color of state law." *Gregory*, 843 F.2d at 120. I will not dismiss Johnson's claim for punitive damages against Morozin, because punitive damages are recoverable in individual-capacity suits against state actors for "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law," *Smith v. Wade*, 461 U.S. 30, 51 (1983), and in a battery case, "if the conduct was malicious, wanton, reckless, willful, or oppressive." *Rizzo v. Haines*, 520 Pa. 484, 507 (Pa. 1989). Johnson's allegations that Morozin dragged him out of his chair by his shirt collar, grabbed and twisted his arm behind his back, forced him to the ground, inflicted a wound that bled profusely, and then removed him from a hospital without seeking medical care for his bleeding wound state a claim that may plausibly rise to the level of "reckless," or "callous" conduct. I will deny counterclaim defendants' motion to dismiss Johnson's request for punitive damages.

## IV. Conclusion

For the reasons explained above, I will deny Morozin and the Supervisors' motion to dismiss. An appropriate order follows.